UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| VICKI J. HAIFLICH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Cause No.: 1:10-CV-254-TLS |
| ANTHEM INSURANCE COMPANIES, INC. | ) | |
| Defendant. | ) | |

**OPINION & ORDER**

This matter is before the Court on the Defendant's Motion for Summary Judgment [ECF No. 16]. The Plaintiff filed suit in Indiana state court alleging breach of contract and promissory estoppel based on a denial of coverage under her health insurance plan. (Compl., ECF No. 1.) The Defendant removed to this Court under federal question jurisdiction pursuant to 28 U.S.C. § 1331. (Notice of Removal, ECF No. 2.) This case presents a federal question because the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, governs the insurance policy at issue. The Plaintiff objects to the Defendant's Motion asserting the existence of material factual disputes. For the reasons explained below, the Court will grant the Defendant's Motion.

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure state that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The motion should be granted so

long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56.1(a) (stating that the movant must provide a "Statement of Material Facts" that identifies the facts that the moving party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is

2

more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

## FACTS

The Plaintiff participated in an employer-provided health care plan underwritten and administered by the Defendant (the Plan). The Plaintiff's coverage under the Plan took effect on July 1, 2007. On July 26, 2007, the Plaintiff underwent a vaginal hysterectomy surgery. Between July 26 and August 29, the Plaintiff received additional treatment related to the surgery. Prior to her surgery her doctor's office contacted the Defendant and spoke with a representative who said that no pre-certification was needed or required for the surgery.[1]

The Defendant refused to provide reimbursement for the hysterectomy and post-surgery treatments based on the Plan's exclusion for pre-existing conditions. Under the Plan, a "Pre-Existing Condition" was defined as "[a] condition (mental or physical) which was present and for which medical advice, diagnosis, care or treatment was recommended or received within 6 Months before [the] Enrollment Date." (Certificate M-80, ECF No. 17-2). The Plan defined the Pre-Existing Period: "6 Months prior to [the] Enrollment Date, the services, supplies or other

---

[1] On a motion for summary judgement the Court views the evidence presented in the light most favorable to the non-moving party, here, the Plaintiff. Some factual disputes, including aspects of this phone call to the Defendant before the surgery, may be in dispute between the parties. This factual summary accepts as true, for purposes of this Motion, the Plaintiff's verison of these events.

care related to the Pre-Existing Condition(s) are not covered for 12 Months after your enrollment." (*Id*. at M-8.) The Plan further excluded Pre-Existing Conditions from coverage under the section of the Plan entitled "Non Covered Services/Exclusions." (*Id*. at M-38.) The Plan's terms gave the Defendant "complete discretion to determine the administration of . . . benefits" including the power to "construe the Contract." (*Id*. at M-75.)

The Defendant relies principally on two pieces of evidence in support of its determination that the Plaintiff's surgery fell within the exclusion for pre-existing conditions. First, a notation in her medical records that on January 9, 2007, less than six months prior to her enrollment in the Plan, the Plaintiff sought medical help because she was "still bleeding vaginally—took 2 birth control Sunday & again yest[erday]." (Appeal File, AnthemVJH 0083, ECF No. 19[2]; Def.'s Br. Summ. J. 7-8, ECF No. 17.) Second, correspondence between her doctors dated July 30, 2007, stated that the Plaintiff had been experiencing menometrorrhagia[3] "off and on for the last 4 months." (Appeal File AnthemVJH 0049; Def.'s Br. Summ. J. 7-8.)

After being denied coverage for her surgery, the Plaintiff began appealing the Defendant's decision within the Defendant's internal appeals process. On January 25, 2008, the Plaintiff received a letter from the Defendant upholding the denial of coverage. In this letter the Defendant based its denial on abdominal pain, vomiting, epigastric pain, gastritis and gallbladder issues, without any reference to menometrorrhagia. The Defendant now concedes that this initial

---

[2]The Court adopts the parties' use of the bates numbering "AnthemVJH ___" for reference to pages within Plaintiff's Appeal File. Because the Appeal File has been placed under seal, the Court additionally provides, for some references, a citation to the parties' briefs as well as the source document.

[3]Menometrorrhagia is "[e]xcessive uterine bleeding, both at the usual time of menstrual periods and at other irregular intervals." Definition of Menometrorrhagia, MedicineNet.com, http://www.medterms.com/script/main/art.asp?articlekey=4351 (last visited Aug. 19, 2011).

basis for denial was erroneous. (Def.'s Reply Br. Summ. J. 5, ECF No. 23.)

Upon receiving this denial letter, the Plaintiff undertook a second appeal through the Defendant's internal appeals process. On September 15, 2009, an appeal hearing took place over a conference call before a four-person internal review panel. This hearing was the first time that the Defendant told the Plaintiff and her counsel that its basis for denying coverage was her pre-existing menometrorrhagia. Counsel for the Plaintiff put forward an alternate explanation for the Plaintiff's inquiry to her doctor concerning vaginal bleeding in January 2007. The Plaintiff had missed two pills of her oral contraceptive which led to increased vaginal bleeding. The Plaintiff presented a Discharge Summary from her hospital visit for the flu in January 2007 to the appeals panel. This document was not included in her medical file as maintained by the Defendant and contained additional information on the incident relied on by the Defendant in its denial. The Discharge Statement indicated that:

> [The Plaintiff] was showing early spotting in terms of her period. She had missed at least 2 pills of her oral contraceptive. Therefore, she was having breakthrough bleeding. . . . For her menometrorrhagia she was instructed to use 2 of her OCPs daily for the next 2 days then resume a normal schedule. Hopefully, that would stop her bleeding and return her normal schedule.[4]

(Exhibit Facsimile Transmission, ECF No. 21-2.) The Defendant did not refer to this alternate explanation, or the Plaintiff's proffered evidence, in the denial it issued after the second level appeal. The Plaintiff had no other documented problems with menometrorrhagia during the look-

---

[4]The Defendant asserts that this document is "unauthenticated" but provides no grounds for questioning the document's veracity. The Court notes that it relies on the document for the purposes of this Motion because it presumes that the Plaintiff could provide an affidavit authenticating the document upon request. The Court is willing to make this assumption because the same attorney who would need to swear to the document's authenticity via an affidavit filed the document with the Court and asserted its authenticity under penalty of sanctions under Federal Rule of Civil Procedure 11.

back period.

On June 30, 2010, the Plaintiff initiated the present lawsuit alleging breach of contract for the Defendant's determination that her surgery was based on a pre-existing condition and promissory estoppel based on the Defendant's denial of coverage after her doctor received an assurance that no pre-certification was necessary.

## ANALYSIS

**A.     Applicability of ERISA and Preemption of State Law Claims**

The parties agree that ERISA governs the Plan. The Defendant asserts, and the Plaintiff does not appear to contest, that the putatively state law claims pleaded in the Complaint should be treated by the Court as if brought under Section 502(a) of ERISA. Section 502(a) provides that "a civil action may be brought . . . by a participant or beneficiary—to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1); *see also Klassy v. Physicians Plus Ins. Co.*, 371 F.3d 952, 954–55 (7th Cir. 2004). "ERISA provides a remedy for plan participants wrongfully denied benefits. However, such claims must be brought under ERISA and creatively pleading a denial of benefits claim as a state law claim does not defeat the broad preemptive force of ERISA." *Id.* at 957. The Plaintiff brings her claims for breach of contract and promissory estoppel principally for failure to pay benefits under the Plan, which was governed by ERISA. The Plaintiff's state law claims are preempted by ERISA; the Court will look to ERISA and ERISA case law in resolving her claims.

**B.     Breach of Contract under the Arbitrary and Capricious Standard**

The policy gives the Defendant discretionary authority to determine benefits eligibility and to interpret the Plan's terms. "In ERISA cases, if the plan grants to its administrator the discretion to construe the plan's terms, then the district court must review a denial of benefits deferentially, asking only whether the plan's decision was arbitrary or capricious." *Hess v. Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 727 (7th Cir. 2007).

> Review under this deferential standard is not a rubber stamp, however, and we will not uphold a termination when there is an absence of reasoning in the record to support it. ERISA also requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for full and fair review by the administrator.

*Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010) (citations and quotation marks omitted).

The Plaintiff has not presented evidence to support a finding that the Defendant was without evidence to support its determination that the surgery and related care fell within the Plan's exclusion for pre-existing conditions. The Defendant argues that two references in the Plaintiff's medical history indicate that she had been experiencing menometrorrhagia during the excluded six month look-back period for pre-existing conditions under the Plan. The Plaintiff does not materially dispute these references in her case file or the Defendant's interpretation of the Plan documents. Rather, the Plaintiff provides additional information supporting alternate explanations for any abnormal uterine bleeding during the look-back period. The Plaintiff argues that the uterine bleeding in January 2007 was caused by her missing two oral contraceptives and was therefore unrelated to the diagnosis which led to her hysterectomy.

However, the arbitrary and capacious standard under which the Court reviews the Defendant's decision does not permit the Court to determine if the Defendant was necessarily

7

right or wrong in its determination that the Plaintiff's surgery was in fact required because of a pre-existing condition, namely a continuing problem with menometrorrhagia for which the Plaintiff received "medical advice, diagnosis, care or treatment . . . within 6 Months [of the] Enrollment Date." Rather, this Court may only determine if the Defendant has provided a reasoned basis for this determination. The Defendant, by justifying its decision with evidence of treatment for menometrorrhagia in January 2007 and the Plaintiff's doctor's note after the surgery that the Plaintiff had been experiencing menometrorrhagia "off and on for the last 4 months," provided a reasoned justification for its decision. This remains the case even if the Plaintiff is correct in asserting that her uterine bleeding in January was in fact caused by missing her oral contraceptive and she experienced no other problems with uterine bleeding during the look-back period. Regardless of the actual cause of the Plaintiff's need for surgery, the Defendant provided a reasoned basis for linking the surgery to a condition for which medical advice was sought during the look-back period. The Defendant thereby reasonably determined that the Plaintiff's surgery and related care fell within the Plan's definition of care related to an excluded pre-existing condition.

In addition to determining whether there was "an absence of reasoning in the record to support" the Defendant's decision, the Court must determine whether the Plaintiff was "afforded an opportunity for full and fair review by the administrator." *See Holmstrom*, 615 F.3d at 766. The Plaintiff asserts that the Defendant used a "completely unfair" process. In support of her contention that the process was unfair, and that the Defendant thereby abused its discretion, the Plaintiff points to: 1) the conflict of interest faced by the Defendant and the employees of the Defendant who reviewed her claim; 2) the inconsistent and contradictory nature of the

Defendant's responses to her appeals; and 3) the Defendant's omission of a particular document, the Discharge Summary from Plaintiff's January 2007 hospitalization, from the Plaintiff's administrative record and from its explanation for the denial after the document was presented to the Defendant by the Plaintiff's counsel during the internal review process.

When an entity that administers a benefits plan, such as an employer or an insurance company, both pays benefits out of its own pocket and determines eligibility, the dual role creates a conflict of interest, and a reviewing court must consider that as a factor in determining whether the plan administrator abused his or her discretion in denying benefits. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). "[T]he significance of the factor will depend on the circumstances of the particular case." *Id.*

> The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to a vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.* at 117 (citation omitted). The Court will determine the importance of this factor by looking to "the reasonableness of the procedures by which the plan administrator decided the claim, any safeguards the plan administrator has erected to minimize the conflict of interest, and the terms of employment of the plan administrator's staff that decides benefit claims." *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 482 (7th Cir. 2009).

The Plaintiff argues that the Defendant "incurs a direct and immediate expense as a result of benefit determinations favorable to plan participants. Therefore, [the Defendant], to at least a

9

degree, cannot be completely impartial in any benefit determination." (Pl.'s Br. Opp. Summ. J. 8, (citation omitted).) While it is true that the Defendant operates under this conflict, and that this conflict constitutes a factor in the Court's analysis, the Plaintiff has presented no indicia of a decision-making process corrupted by this conflict of interest, such as a history of biased claim administration by the Defendant or an inappropriate set of incentives faced by the Defendant's employees tasked with reviewing claims. No rational finder of fact could find that the Defendant abused its discretion based on a conflict of interest because the Plaintiff presented no evidence supporting her allegation of bias in the Defendant's claims administration or appeals procedures.

Similarly, the Defendant's alteration of its basis for denial between the Plaintiff's first and second internal appeal does not support an allegation of abuse of discretion. The Defendant concedes that it was mistaken in attributing its initial denial to a condition other than menometrorrhagia. That the Defendant initially made a mistake and then, after further internal review, corrected that mistake does not indicate that the Plaintiff was denied the opporunity for a full and fair review of her claim. Finally, the omission of the Discharge Summary from the Plaintiff's January 2007 treatment, faxed by the Plaintiff's counsel to the Defendant after being presented to the appeals panel, provides only a limited inference of procedural unfairness. The information contained in the document, as explained above, is not ultimately damning to the Defendant's case. The document provides additional information on the Plaintiff's treatment and an alternative potential cause of her uterine bleeding but does not materially contradict the Defendant's basis for its conclusion that the Plaintiff's surgery fell within the pre-existing condition exclusion. The Defendant's failure to account for this document on the record does not, in itself, indicate an "absence of reasoning in the record" or that the Defendant's process failed to

provide the Plaintiff with a full and fair review.

"[A]rbitrary-and-capricious review turns on whether the plan administrator communicated specific reasons for its determination to the claimant, whether the plan administrator afforded the claimant an opportunity for full and fair review, and whether there is an absence of reasoning to support the plan administrator's determination." *Majeski.,* 590 F.3d at 484 (quotation marks omitted). The Defendant here gave the Plaintiff a specific reason for the denial at issue. The reason given was a reasonable justification for the Defendant's determination that the Plaintiff's surgery fell within the Plan's exclusion for pre-existing conditions. Because the Plaintiff did not put forward evidence materially disputing the Defendant's grounds for its determination or evidence that the review process was not full or fair the Defendant is entitled to judgment as a mater of law on the Plaintiff's claim for breach of contract.

**C.     Estoppel Claim**

Taken in the light most favorable to the Plaintiff, the evidence cannot support a claim of promissory estoppel under ERISA. The Plaintiff provides no legal argument in support of this claim in her Brief in Opposition to Defendant's Motion for Summary Judgment and thereby appears to concede to judgment against her on this issue as a matter of law.

Under ERISA, "statements or conduct by individuals implementing the plan can only estop . . . the plan's written terms in extreme circumstances." *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007) (quotation marks omitted). "[I]n order to prevail on an estoppel claim under ERISA, [the Court] ordinarily require[s] that plaintiffs show: (1) a knowing misrepresentation; (2) made in writing; (3) reasonable reliance on that representation by them; (4) to their detriment." *Id.*; *see also Kamler v. H/N Telecomm. Sers., Inc.*, 305 F.3d 672, 679 (7th

Cir. 2002) ("ERISA-estoppel can encompass both the concept of promissory estoppel and the concept of equitable estoppel").

The Plaintiff's estoppel claim fails because whatever assurance her doctor's office received, even if it constituted a waiver of the Plan's pre-existing condition exclusion, was not in writing. ERISA-estoppel clearly requires a written communication and the Plaintiff here relies only on evidence of statements made during a telephone conversation. The Court finds no basis for departing from the requirement of a written communication and grants summary judgment to the Defendant on that basis as to the Plaintiff's estoppel claim.

**CONCLUSION & ORDER**

For the foregoing reasons, the Defendant's Motion for Summary Judgment [ECF No. 16] is GRANTED. The Clerk is DIRECTED to enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on August 25, 2011.

           s/ Theresa L. Springmann
           THERESA L. SPRINGMANN
           UNITED STATES DISTRICT COURT